## In Re Anonymous No. 12 D.B. 79

Disciplinary Board Docket No. 12 D.B. 79.

McDONALD, *member*, June 4, 1986—Pursuant to Rule 218 (c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania (board) submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF THE PROCEEDINGS

Petitioner, an attorney heretofore admitted to the practice of law in the Commonwealth of Pennsylvania, was disbarred by order of the Supreme Court of Pennsylvania dated May 30, 1980. On September 6, 1985, petitioner filed his petition for reinstatement with the Disciplinary Board. On September 9, 1985 the matter was referred to disciplinary hearing committee [ ], consisting of [ ]. A hearing was held on October 24, 1985 before hearing committee [ ]. At the hearing, petitioner was represented by [A], Esq., and [B], Esq., Assistant Disciplinary Counsel, appeared for the Office of Disciplinary Counsel. On January 22, 1986, hearing committee [ ] filed its report recommending that petitioner be reinstated to the practice of law. No exceptions to the report of the hearing committee have been filed by either the Office of Disciplinary Counsel or petitioner. This matter came before the Disciplinary Board for adjudication on March 17, 1986.

## II. DISCUSSION

In order for petitioner to gain reinstatement to the practice of law, he has the burden of demonstrating by clear and convincing evidence, that he has both

the moral qualifications and the competency and learning required for admission to practice in this Commonwealth. In addition, he has the burden of demonstrating that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar or the administration of justice, nor subversive to the public interest. See Rule 218 (c)(3)(i) of the Pennsylvania Rules of Disciplinary Enforcement.

Petitioner was born April 19, 1931 and was initially admitted to the bar of the Supreme Court of Pennsylvania on May 25, 1959. He engaged in the private practice of law until his disbarment on May 30, 1980.

Petitioner's disbarment resulted from a series of charges relating to cases where petitioner failed to act diligently on behalf of his clients and then systematically engaged in cover-up and misrepresentation in an attempt to preclude exposure of his failure to act. Prior to the proceedings which resulted in disbarment, petitioner had been publicly censured by the Supreme Court of Pennsylvania on September 2, 1976 and had been subjected to an informal admonition by chief counsel for the Disciplinary Board of the Supreme Court on December 16, 1976. Both incidents of prior discipline related to charges similar to those which resulted in his disbarment.

Since his disbarment on May 30, 1980, petitioner has worked full time in the capacity of a paralegal performing legal research and drafting pleadings. In his work he has reviewed the advance sheets regularly and has maintained familiarity with the Rules of Procedure.

Following his disbarment, petitioner was treated by a psychiatrist. [C], M.D., who testified on petitioner's behalf. Dr. [C] concluded that petitioner had a passive/aggressive personality disorder, but

that he was not psychotic. He concluded there was no disturbance of reality and that the primary problem was neurotic in nature. Petitioner was unable to deal firmly with *domineering*-type clients. He had a strong desire to be perceived as well-liked and competent which led to his cover-up activities. Dr. [C] testified petitioner has gained insight into his problem and has recovered. In Dr. [C]'s considered professional judgment, petitioner will not relapse to the unprofessional and unethical conduct which precipitated the disbarment.

Two former president judges of the Court of Common Pleas of [ ] County, the district attorney, the president of the [ ] County Bar Association, members of the bar and prominent citizens all testified to the high moral character and qualifications of petitioner. In addition, testimony was presented at the hearing that all the complainants involved in the initial proceedings against petitioner were contacted and they had no objection to his readmission. The testimony of petitioner has convinced this board that he has learned his lesson well.

Although petitioner's misconduct was most serious, it did not involve misappropriation of clients' funds. Petitioner had been the subject of civil actions based upon his malpractice. All but one, a judgment in the principal amount of $35,000, have been paid. Because of the fact that the underlying charges did not involve misappropriation of clients' monies and the amount of the judgment involved, the board concludes that petitioner should be readmitted prior to satisfaction of that judgment.

The board is convinced that petitioner has satisfied the burden of proof imposed upon him and is entitled to readmission.

## III. FINDINGS OF FACT

The Disciplinary Board of the Supreme Court of Pennsylvania hereby adopts the following findings of fact of the hearing committee:

1. Petitioner, [  ], is an adult individual residing at [  ] [  ], Attorney I.D. [  ].

2. Petitioner was born on April 19, 1931, in [  ], Pa.

3. Petitioner was disbarred by order of the Supreme Court dated May 30, 1980, indexed to no. [  ], Disciplinary Docket Board File No. 12, D.B. 79.

4. Prior to his disbarment, petitioner was publicly censured by the Supreme Court on September 2, 1976, no. [  ], Disciplinary Docket No. [  ], Board File nos. 23, D.B. 74, 7 D.B. 75.

5. Petitioner was also given an informal admonition by the Supreme Court Disciplinary Board acting through its chief disciplinary counsel Allen B. Zerfoss on December 16, 1976. See Disciplinary File no. [  ].

6. All the charges leading to disciplinary action involve similar fact patterns, namely the failing to take certain action on behalf of a client, followed by a pattern of misrepresentation to this client as to acts that had not in fact been taken, thereby ultimately prejudicing the interests of the client and the administration of justice.

7. Following his disbarment in May of 1980, petitioner underwent psychiatric treatment with [C], M.D., of [  ], Pa. from June of 1980 until approximately January of 1981.

8. Dr. [C]'s diagnosis was that petitioner had a passive/aggressive personality disorder, but that he was not psychotic.

9. Dr. [C] testified that there never was any disturbance of reality and petitioner's primary problems were neurotic in nature.

10. Dr. [C] testified that petitioner received insight from the counseling sessions and talked about his ability to deal with *domineering*-type clients.

11. In addition, according to Dr. [C], petitioner had difficulty in sharing his feelings with others and had a strong desire to be perceived as well-liked and competent.

12. Dr. [C] released petitioner from care in January, 1981, feeling that he had sufficient insight into his problems to correct his behavior. Dr. [C] testified that while there was a possibility of a relapse, petitioner had shown good judgment in recognizing situations with which he had trouble in the past.

13. It was Dr. [C]'s professional opinon and the finding of the committee that petitioner will not relapse into his former behavior pattern.

14. Since the time of the disbarment petitioner has worked as a paralegal in the legal office of the Honorable (Ret.) [D], of [   ].

15. Judge [D] testified that he has known petitioner for 25 or 30 years and has employed him as a legal researcher and brief writer since his disbarment.

16. Judge [D] testified that he has had an opportunity to observe the work product of petitioner and discuss legal concepts with him.

17. It was Judge [D]'s opinion that petitioner had both the legal expertise and moral qualifications to resume the practice of law.

18. Similar opinions were expressed by [E], former Judge of [   ] County, [F], District Attorney of [   ] County, [G], President of the Bar Association of [   ], and [H], Esq. and [I], Esq., members of the bar of [   ] County.

19. The aforesaid also testified that the readmission of petitioner would fill a void in the bar

of [ ] County because of petitioner's litigation experience.

20. Petitioner testified on his own behalf and discussed in a frank and forthright manner his psychological difficulties which led up to his disbarment in 1980.

21. Petitioner testified that he has taken therapy with Dr. [C], and that he has gained insight into his problem, and now feels that he can withstand the pressure of practicing law.

22. Petitioner discussed frankly his inability to say *no* to people with strong personalities because of his desire not to disappoint.

23. Petitioner feels that he can now handle those situations and that he expects to receive reinforcement from the people with whom he will practice in Judge [D]'s office.

24. In addition to the testimony of the witnesses, a series of letters was presented that testified to the moral character of petitioner.

25. Counsel for the Disciplinary Board, [B], testified that he had contacted the complaining parties from the disbarment proceeding and none had any objection to reinstatement of petitioner.

26. In petitioner's petition for reinstatement he notes that there is only one unsatisfied record of judgment at the present time.

27. No client funds were misappropriated by petitioner.

## IV. CONCLUSIONS OF LAW

The Disciplinary Board of the Supreme Court of Pennsylvania makes the following conclusions of law:

1. Petitioner has the competency and learning in the law required for readmission to the practice of law in the Commonwealth of Pennsylvania.

2. Petitioner has the moral qualifications for readmission to the practice of law in the Commonwealth of Pennsylvania.

3. Petitioner's resumption of the practice of law in the Commonwealth of Pennsylvania will not be detrimental to the integrity and standing of the bar or the administration of justice, nor will it be subversive to the public interest.

4. Petitioner should be reinstated to the practice of law in the Commonwealth of Pennsylvania and should be readmitted to the bar of the Supreme Court of Pennsylvania.

## V. RECOMMENDATIONS

The Disciplinary Board recommends to the Supreme Court of Pennsylvania as follows:

1. That petitioner, [ ], be readmitted to the practice of law.

2. That petitioner, [ ], shall pay all costs of this proceeding.

Messrs. Curran, McGinley, Mundy and Brown and Ms. Heh did not participate in this adjudication.

## ORDER

NIX, *C.J.*, And now, this July 7, 1986, the recommendation of the Disciplinary Board dated June 4, 1986, is accepted and the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.

Mr. Justice Larsen, Mr. Justice McDermott and Mr. Justice Papadakos would impose as an additional requirement satisfaction of the outstanding judgment in the amount of $35,000 within three years of the date of reinstatement.